UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNECTICUT INDEPENDENT UTILITY WORKERS LOCAL 12924, *et al.*, Plaintiffs, *v.* CONNETICUT NATURAL GAS CORPORATION, UIL HOLDINGS CORPORATION, *et al.*, Defendants. | Civil No. 3:12cv961 (JBA) March 11, 2014 |

**RULING ON MOTION FOR RECONSIDERATION**

On November 21, 2012, Plaintiffs Connecticut Utility Workers Local 12924, Robert Eubanks, Emmerich Fellinger, Mark Whelden, and Martin Ritter (collectively, "the Union"), and Ronald Holmes, Rollin Cowels, Roosevelt Bright, Francis Csekovsky, Robert Messenger, Peter Moschetto, Joan Polzun, and Carl Schaeffer (collectively, "the Plaintiff Retirees") filed a Second Amended Verified Complaint [Doc. # 35] against Defendants Connecticut Natural Gas Corporation ("CNG"), UIL Holdings Corporation ("UIL"), UIL Benefits Administration Committee, Angel Bruno, Steven Favuzza, William Manniel, Diane Pivirotto, Joseph Thomas, Patricia Cosgel, Christopher Malone, Richard Nasman, and John Prete (collectively "the Benefits Administration Committee"), UIL Holdings Corporation Retiree Health Plan for Selected Employees, UIL Holdings Corporation Cafeteria Plan for Selected Employees—Plan No. 531, and UIL Holdings Corporation Employee Health Plan—Plan No. 532, alleging violations of the Labor–Management Relations Act, 29 U.S.C. § 185 ("LMRA") and the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3) ("ERISA"). On December 20, 2012, Defendants moved [Doc. # 37] to dismiss all of Plaintiffs' claims. After holding oral argument, the Court granted in part and denied in part the motion to

dismiss, dismissing Counts One, Two, Three, Four, Five, Six, Nine, and Ten.  (*See* Mot. to Dismiss Ruling [Doc. # 52].)  Plaintiffs now move for reconsideration of the Court's decision to dismiss Counts One Through Six.  For the following reasons, Plaintiffs' motion will be granted in part and denied in part.

I.      **Background**

        In 1991, CNG and the Union entered into a Collective Bargaining Agreement ("CBA"), which set the maximum payments CNG would make toward retiree major medical insurance premiums.  (2d Am. Ver. Compl. [Doc. # 35] ¶ 46.)  In 1994, CNG and the Union renewed this agreement via a letter (the "Contract") memorializing the parties' understanding regarding the maximum premium payments:

> In 1991, [CNG] and the Union negotiated a reduction of the lifetime maximum from $1,000,000 to $250,000 on major medical, and also set [CNG] maximum premium payments for retirees.  [CNG] made the following commitment; which we renew by this letter:  If any employee's balance in his/her major medical maximum reaches a balance of $250,000, and the premiums for medical insurance reach a level of $375 for single or $750 for family coverage, the Company will hold discussions with the Union for the purposes of reviewing both the lifetime maximum and the premium sharing.

(Contract, Ex. 1-A to 2d Am. Ver. Compl.; 2d Am. Ver. Compl. ¶ 47.)  At first, CNG, UIL, and the Benefits Administration Committee made the premium calculations as agreed to by the parties, but at some point in time after the Contract was signed, CNG, UIL, and the Benefits Administration Committee unilaterally changed the method of calculating the maximum premium payments for retiree medical insurance policies, by reducing the maximum premium payments or the 'cap' applied to various medical insurance policies by varying percentages, such that the maximum premium payments made by CNG are reduced and the amount of the premium that retirees must pay is

increased.  (2d Am. Compl. ¶¶ 49–50, 52.)  Defendants also unilaterally blended the dependent caps for retiree health benefit plans (*id.* ¶ 69), though Plaintiffs were not notified of this change until April 1, 2012 (*id.* ¶ 53).

CNG, UIL, and the Benefits Administration Committee formerly calculated premium payments for retired and active employees separately, but at some point in time, Defendants began pooling the two groups of employees together for the purpose of calculating premium payments.  (*Id.* ¶ 76.)  Plaintiffs first learned of this change in practice on April 1, 2012.  (*Id.*)  Since that time, Defendants have separated retired and active employees into two pools, but continue to charge both groups the single pooled rate, thereby increasing the premiums of active employees and capturing any cost savings for Defendants.  (*Id.* ¶¶ 77–78.)  As a result of the changes, on May 4, 2012, June 7, 2012, and August 3, 2012, Plaintiffs submitted ERISA document disclosure requests to the CNG Benefits Administrator, seeking the most recent and previous summary plan descriptions, prior bargaining agreements, and other instruments under which the benefits plans are operated.  (*Id.* ¶ 83.)  Defendants replied to these requests by letter on June 1, 2012, and June 20, 2012, but have not provided full responses to each of Plaintiffs' requests for documents and clarification.  (*Id.* ¶ 84.)

In moving to dismiss Defendants argued, *inter alia*, (1) that Plaintiffs lacked standing to bring Counts One and Two, which alleged breach of contract pursuant to § 301 of the LMRA, because they did not retire while the CBA was in force; (2) that Plaintiffs' LRMA claims were untimely because the CBA had expired more than six years before this action was initiated; (3) that Counts One through Four, which alleged breach of contract pursuant to § 301 of the LMRA and violation of the Retiree Health Benefit Plan pursuant to § 502 of ERISA, should be dismissed because Plaintiffs could not

establish a vested right in the set premium caps; and (5) that Counts Five and Six, which alleged breach of fiduciary duty in violation of ERISA, should be dismissed because without vested benefits, the modification of an ERISA welfare benefits plan is not a fiduciary act.  Ultimately, the Court ruled that Plaintiffs had alleged sufficient facts to show that the Contract was unexpired at the time they retired and that thus the allegations did not show whether the LMRA claims were untimely.  (*See* Mot. to Dismiss Ruling at 5–9.)  However, the Court determined that there was no language in the Contract or the plan documents that could be reasonably interpreted as creating vested benefits and dismissed Counts One through Four.  (*See id.* at 11–13.)  For this same reason, the Court concluded that Defendants' actions in changing the method of calculating the premium contribution did not implicate their fiduciary duties under ERISA and dismissed Counts Five and Six.  (*See id.* at 14–15.)

## II.    Legal Standard

Motions for reconsideration require the movant to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order."  D. Conn. L. Civ. R. 7(c)1.  The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478).  This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.

1995).  If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision absent clear error.  *Id.*

## III.    Discussion

Plaintiffs move for reconsideration of the Court's ruling dismissing Counts One through Six, arguing that:   (1) Counts One and Two should be reinstated because Plaintiffs have alleged sufficient facts to show that Defendants breached the Contract by failing to hold discussions with the Union; (2) Counts One through Four should be reinstated because Plaintiffs have alleged sufficient facts to show that they had vested benefits for the life of the Contract; and (3) Counts Five and Six should be reinstated because Plaintiffs have alleged sufficient facts to show that they had vested benefits for the life of the Contract.  Defendants counter that Plaintiffs failed to include any reference to failure to negotiate as the basis for their claims in Counts One and Two of the Second Amended Verified Complaint and that the Court therefore should not consider Plaintiffs' arguments regarding that claim in the context of this motion.  Defendants further assert that the Court has previously decided that Plaintiffs did not have vested benefits for the life of the Contract and that therefore the dismissal of Counts One through Six was proper.

### A.      Counts One and Two

Plaintiffs argue that the Court failed to consider one of its alleged breaches of the Contract with respect to Counts One and Two when it dismissed those claims.  In its Ruling, the Court explained that Plaintiffs' counsel had relied on the following four alleged breaches of the Contract at oral argument:   "(1) Defendants imposed under-the-cap contributions, (2) Defendants increased Plaintiffs' premiums, (3) Defendants blended

dependent caps, and (4) Defendants pooled active and retired employees without passing the savings along to plan members." (Mot. to Dismiss Ruling at 9 n.3; *see also* Hr'g Tr. [Doc. # 61] at 58–60 (describing the four breaches that Plaintiffs' focused on in the Second Amended Ver. Complaint).) However, the Court also noted that "[a]t oral argument, Plaintiffs' counsel did not immediately identify the failure to hold discussions as one of the breaches alleged in the Second Amended Verified Complaint. However, when pressed, he stated that Defendants breached the Contract by failing to negotiate." (*Id.* at 13 n.4; *see also* Hr'g Tr. at 62 ("We do allege the breach for not negotiating.").) At oral argument, the Court had the following colloquy with Plaintiffs' counsel:

| | |
|---|---|
| The Court: | So, Mr. Peikes believes that the analysis of whether the counts that aren't related to the disclosure are plausible under the *Iqbal* standard, are analyzed the same way for an ERISA claim as for a LMRA claim, are you disagreeing with that and saying that the failure to bargain or discuss the changes is the LMRA claim as differentiated from an ERISA claim? |
| Mr. Gagne: | No, I don't think there's a difference. |
| The Court: | So you [are] both in agreement that they are [the] same, the same analysis. |
| Mr. Gagne: | If you have a contract, you have a contract. The contract is enforceable under ERISA or under the LMRA. It's not going to be enforceable under one and not be enforceable under the other. |
| The Court: | So those counts rise and fall on the same tide. |
| Mr. Gagne: | Yes. |

(Hr'g Tr. at 33–34.) Based on this colloquy, the Court dismissed Counts One and Two, in conjunction with Counts Three and Four on the grounds there was no vesting language in the Contract. However, the Court did not address whether Plaintiffs had alleged sufficient facts to support their LMRA claims based on the theory that Defendants violated the Contract by failing to negotiate with the Union.

Defendants argue that the Court need not consider Plaintiffs' claims regarding failure to negotiate because they were not raised in the Second Amended Verified Complaint and thus Plaintiffs are barred from raising them in the context of this motion for reconsideration.  *See Mahadeo v. New York City Campaign Finance Bd.*, 514 F. App'x 53, 55 (2d Cir. 2013) ("A party may not use a motion for reconsideration to advance new issues or theories of relief that were not previously presented to the court.  Here, the District Court did not abuse its discretion in denying Mahadeo's reconsideration motion, because he sought in that motion to raise an entirely new theory of relief . . . that was not contained in his original complaint.").   In the introduction of the Second Amended Verified Complaint, Plaintiffs describe their LMRA claims as follows:

> 3. This action is brought pursuant to § 301 of [the] LMRA, 29 U.S.C. § 185, seeking a declaration that the retiree benefits in the Contract vested for life, and that Defendants cannot unilaterally change the method of calculating maximum premium payments that CNG makes for Plaintiff retirees provided for under the Contract, and a Preliminary and Permanent injunction prohibiting such changes, and reimbursement for any increased payment of premiums made by Plaintiff retirees due to Defendants' unilateral changes.

(2d Am. Ver. Compl. ¶ 3.)   Thus, Plaintiffs did not immediately identify a failure to negotiate as the foundation for their LMRA breach of contract claims.

Furthermore, in Count One, the alleged breaches on which the count is based are described as follows:

> 88. Defendant CNG's action of unilaterally changing the method of calculating the maximum premium payments CNG is obligated to pay under the Contract is a breach of the Contract between Defendant CNG and Plaintiff Union, and is actionable pursuant to § 301 of the LMRA.

> 89. Defendant CNG's action of unilaterally blending dependent caps to create a new dependent cap, is a breach of the Contract between

7

Defendant CNG and Plaintiff Union, and is actionable pursuant to § 301 of the LMRA.

(*Id.* ¶¶ 88–89.)  Similarly, in Count Two, the alleged breaches on which the count is based are described as follows:

> 97. Defendant CNG has breached the Contract and its obligation thereunder between CNG and Plaintiff Union by unilaterally changing the calculations used to determine the premium sharing between the parties.

> 98. Defendant CNG has breached the Contract and its obligation thereunder between CNG and Plaintiff Union by unilaterally blending dependent caps to create a new dependent cap.

(*Id.* ¶¶ 97–98.)  Neither Count One nor Count Two lists failure to negotiate as one of the complained of contractual breaches.  As is clear from this language, the heart of Plaintiffs' claims is that they were entitled to vested benefits as a result of the Contract and that Defendants breached the Contract by altering the promised benefits.

However, Plaintiffs dispute that the failure to negotiate claim was not raised in the Second Amended Verified Complaint, pointing to paragraph 50, which states:  "*In violation of the Contract and Retiree Health Plan, CNG failed to hold discussions with the Union*, and instead CNG, UIL, and the Benefits Administration Committee changed the method of calculating the maximum premium payments or the 'cap' applied to various retiree medical insurance policies by varying percentages."  (2d Am. Ver. Compl. ¶ 50 (emphasis added).)  Plaintiffs incorporated this paragraph by reference in both Counts One and Two.  Thus, Plaintiffs argue, the reference to Defendants' failure to hold discussions with the Union earlier in the Second Amended Verified Complaint makes it clear that subsequent use of the term "unilateral" in Counts One and Two includes Defendants' failure to negotiate within the claimed breaches in support of those counts. While the Court is not convinced that the mere use of the term "unilateral" conveys that

Plaintiffs' claims included Defendants' failure to negotiate, paragraph 50 does allege that Defendants' failure to hold discussions with the Union was a violation of the Contract, and this paragraph was incorporated by reference in both Counts One and Two. Furthermore, Plaintiffs' counsel did raise the issue of failure to negotiate, albeit belatedly, at oral argument. (*See* Hr'g Tr. at 62 ("We do allege the breach for not negotiating.").) Therefore, Plaintiffs' motion for reconsideration with respect to Counts One and Two does not seek to advance a new theory not previously raised with the Court, and the Court will thus consider the merits of Plaintiffs' argument that Defendants' failure to negotiate is sufficient to allege a violation of the LMRA for breach of contract.

Defendants argue that Plaintiffs cannot assert a breach of contract claim for failure to negotiate because the Contract contains only a promise to negotiate, which is merely an "agreement to agree" and as such it is not legally binding. Plaintiffs counter that the Contract's requirement that the parties negotiate if the premium caps are ever met is not "an agreement to agree," but rather is an enforceable contractual obligation and that they have alleged sufficient facts to show that Defendants breached that obligation. Courts interpreting collective bargaining agreements should apply traditional rules of contract interpretation "as long as they are consistent with federal labor policies." *United Steel, Paper and Forestry, Rubber Mfg., Energy, Allied Industrial and Service Workers International Union, ALF-CIO/CLC v. Cookson America, Inc.*, 710F.3d 470, 473 (2d Cir. 2013). To be enforceable, "[a]n agreement must be definite and certain as to its terms and requirements. So long as any essential matters are left open for further consideration, the contract is not complete." *Geary v. Wentworth Labs., Inc.*, 60 Conn, App. 622, 627 (2000) (internal citations and quotation marks omitted). Thus, "[t]he general rule is that an agreement to agree is too indefinite to be legally binding when it

requires a superseding contract the terms of which must be negotiated." *Kulick v. City of Hartford*, CV065002597, 2007 WL 4707809, at *2 (Conn. Super. Ct. Dec. 10, 2007).

Defendants cite numerous cases announcing the proposition that an "agreement to agree" is not an enforceable contract in support of their argument that Plaintiffs lack a viable claim for relief.  For example, in *Levion v. Société-Générale*, 822 F. Supp. 2d 390 (S.D.N.Y. 2011), the district court held that "[a]t most, Plaintiff had an agreement with SG management to further discuss compensation issues regarding the NDF transactions. Such an agreement to further negotiate will not support Plaintiff's breach of contract claim." *Id.* at 402–03.  However, unlike this case, the *Levion* plaintiff's breach of contract claim was based on his employer's alleged failure to properly calculate his bonus, not on his employer's alleged failure to negotiate with him regarding the calculation of his bonus. "Agreements to negotiate in good faith can be binding."  1-4 Corbin on Contracts § 4.1. Thus, another court in the same district held that an agreement between two parties to use their best efforts to negotiate was not unenforceable as an "agreement to agree" because it did not require that any agreement actually be achieved.  *Pinnacle Books, Inc. v. Harlequin Enters.*, 519 F. Supp. 118, 121 (S.D.N.Y. 1981).

The Ninth Circuit has addressed the distinction between "an agreement to agree" and an agreement to negotiate in good faith in the context of a labor contract.  In *Local 3-7, International Wood Workers of America v. Daw Forest Products Co.*, 789 F.2d 789 (9th Cir. 1987), the employer and the union had entered into a memorandum of agreement whereby the union was required to submit a proposal for a new working agreement.  If the employer determined the union proposal had merit then further discussions would be conducted.  If the employer determined that the proposal was without merit, it would gradually phase out all of the bargaining unit's work.  The district court held that the

contract was unenforceable because it constituted a "contract to make a contract" and the standards for determining whether the union's proposal was meritorious were too vague for the court to enforce.  The court also held that it could not fashion a remedy for the alleged breach because forcing the parties back to the bargaining table would be futile as the employer no longer performed any of the bargaining unit's work.  However, the Ninth Circuit overruled the district court's decision explaining that:

> A contract to make a contract is unenforceable because essential terms are left to future agreement.  The Memorandum here however, is not a contract to make a contract.  No essential terms of a future working agreement are left undefined as the Memorandum does not require that a working agreement actually be concluded.  Instead, the Memorandum outlines the agreed upon *procedure governing discussion and consideration* of proposals for a new working agreement.  As such, the Memorandum to consider and discuss is akin to a contract to negotiate.  This type of agreement may be enforceable, particularly in the context of labor relations.

*Id.* at 793 (internal citations and quotation marks omitted) (emphasis added).  The court went on to conclude that although the agreement did not define the term "meritorious" a court could determine whether the contract had been breached based on principles of federal labor law regarding breach of the duty to bargain in good faith.  *Id.* at 794.  ("A party's subjective 'good faith' in bargaining may be ascertained from an examination of the totality of the circumstances indicative of mental state.").

Similar to the agreement at issue in *Daw Forest Products*, the Contract here is not an agreement to agree because it does not require the parties to reach an ultimate agreement as to the appropriate level of premiums and benefits under the benefits plan.  Rather, it requires that the parties negotiate in good faith regarding the premiums if the premium cap is ever reached.  As such, the Contract is enforceable as an agreement to negotiate in good faith in the context of labor relations.  Such an interpretation is

consistent with the contract principle that courts "should avoid destruction of contracts because of uncertainty and construe them to effectuate the reasonable intentions of the parties if possible." *Id.* at 793. The Contract makes clear that the Union agreed to a reduced lifetime maximum in exchange for a commitment from Defendants to hold discussions with the Union regarding benefits if the premium caps were ever surpassed. Plaintiffs have alleged that the caps were exceeded and that Defendants never negotiated. The Court has the power to remedy this alleged breach by ordering specific performance of the Contract and sending the parties to the bargaining table. Thus, Plaintiffs have alleged sufficient facts in support of the breach of contract claim for failure to negotiate in violation of the LMRA and the Court therefore reinstates Counts One and Two of the Second Amended Verified Complaint.

### B.     Counts One Through Four

Plaintiffs also urge this Court to reconsider its ruling dismissing Counts One through Four on the grounds that there were no vested benefits, arguing that the Contract did provide for vested benefits for the life of the Contract. In support of this argument, Plaintiffs cite *Conn Indep. Utility Workers, Local 12924 v. Conn. Natural Gas.*, 05CV1553 (MRK), 2006 WL 1600673 (D. Conn. June 7, 2006). In that case, the defendants argued that a reservation of rights in the plan documents similar to the reservation of rights used in the plan documents in this case demonstrated that benefits had not vested. The plaintiffs countered that the language of the CBA rendered the defendants' right to change benefits unilaterally ambiguous. The court noted that "it is appropriate for a court to look at a CBA when determining a plan-provider's obligations under ERISA," *id.* at *1, and, without addressing the merits of the parties' arguments, permitted the plaintiffs to amend the complaint so that the court could decide the issue

with a more fully developed record, *id.* at *2.  Here, however, the Court did look at the terms of the Contract in its ruling on the Motion to Dismiss, and held that "it does not appear that there is any language [in the Contract] that could reasonably be interpreted as creating vested benefits."  (Mot. to Dismiss Ruling at 13.)  Plaintiffs argue that the Court arrived at this conclusion by relying on cases that do not deal directly with the issues in the present case.  Plaintiffs admit that their arguments "present novel issues of law" and that this is "a matter of first impression," but urge the Court to find for the first time that benefits may vest for the life of a contract such that any modifications of those benefits during the life of the contract gives rise to an ERISA claim.  Such arguments are not typically proper grounds for reconsideration of a prior ruling.  The Court has evaluated the terms of the Contract and determined that it contains no language creating vested benefits.  Rather, the Contract merely requires the parties to hold negotiations if a certain threshold is ever met.  Such an agreement would not limit Defendants' ability to amend the plan, as the outcome of negotiations would be purely speculative.  Therefore, Plaintiffs' motion for reconsideration of Counts One through Four on the basis that benefits had vested for the life of the Contract is denied.

### C.    Counts Five and Six

Finally, Plaintiffs' move for reconsideration of the Court's ruling dismissing Counts Five and Six, arguing that because the Contract provides for vested benefits for the life of the agreement, the amendments to the plan constituted a fiduciary act giving rise to claims for breach of fiduciary duty in violation of ERISA.  However, because the Court has declined to reconsider its ruling that there were no vested benefits under the Contract, Plaintiffs' argument as to Counts Five and Six necessarily fail.  Therefore, Plaintiffs' motion for reconsideration of Counts Five and Six is denied.

**IV.     Conclusion**

For the foregoing reasons, Plaintiffs' Motion [Doc. # 60] for Reconsideration is GRANTED with respect to Counts One and Two, and DENIED with respect to Counts Three through Six.    Counts One and Two are hereby reinstated to the extent that those counts allege breach of contract for failure to negotiate in violation of the LMRA.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of March, 2014.

14